**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**CSX TRANSPORTATION, INC.,**

**Plaintiff,**

**v.**

**NATIONAL MEDIATION BOARD,**

**Defendant.**

**Civil Action No. 04-0611 (RWR)**

**MEMORANDUM OPINION**

Plaintiff CSX Transportation, Inc., filed this case seeking declaratory and emergency preliminary and permanent injunctive relief to enjoin defendant, the National Mediation Board ("NMB"), from enforcing or implementing an NMB Order dated April 7, 2004 ("Order"), which consolidates 31 arbitration boards ("PLBs") established to hear disputes between plaintiff and the Brotherhood of Maintenance of Way Employees ("BMWE"), the collective bargaining representative for some of plaintiff's employees. Upon the parties' representations that the motion for preliminary injunction was appropriate to consolidate with a proceeding on the merits under Federal Rule of Civil Procedure 65(a)(2), the court directed the parties to submit their dispositive motions. Plaintiff has moved for summary judgment and defendant has moved to dismiss or, in the alternative, for summary judgment. Because the Railway Labor Act, 45 U.S.C. §§ 151-188 (2000) ("RLA") permits only carriers and unions, or

under certain circumstances, specially designated members, to establish and assign cases to a PLB, defendant's Order is a gross violation of the RLA. Plaintiff's motion for summary judgment will be granted and defendant's motion to dismiss or, in the alternative, for summary judgment will be denied.

BACKGROUND

Plaintiff operates an interstate railroad system and is a common carrier within the definition of the RLA. See 45 U.S.C. § 151 First; Pl.'s Statement of Undisputed Facts ("Pl.'s Stmt.") ¶ 1; Def.'s Resp. to Pl.'s Statement of Material Facts ("Def.'s Resp.") ¶ 1. The Brotherhood of Maintenance of Way Employees ("BMWE") is a labor union and a representative within the meaning of the RLA, which represents plaintiff's maintenance of way employees. (Pl.'s Stmt. ¶ 2; Def.'s Resp. ¶ 2.) Plaintiff and BMWE are parties to collective bargaining agreements, including the June 1, 1999 System Agreement ("System Agreement"). (Pl.'s Stmt. ¶ 3; Def.'s Resp. ¶ 3.) Plaintiff and BMWE have been involved in multiple disputes, and BMWE has filed grievances regarding plaintiff's decisions to contract out work covered by the scope rule of the System Agreement. (Pl.'s Stmt. ¶¶ 4-5; Def.'s Resp. ¶¶ 4-5.) In March 2000, BMWE was enjoined from engaging in a work stoppage against plaintiff by a federal court which ruled that the dispute was "minor" under the RLA and that BMWE and plaintiff were required to engage in a mandatory

arbitration process. (Def.'s Statement of Material Facts ("Def.'s Stmt.") ¶ 5; Pl.'s Resp. to Def.'s Statement of Material Facts ("Pl.'s Resp.") ¶ 5.) Accordingly, BMWE initially submitted its contracting out grievances to the National Railroad Adjustment Board ("NRAB" or "Adjustment Board") for arbitration. (Pl.'s Stmt. ¶ 6; Def.'s Resp. ¶ 6.) In February 2002, pursuant to the RLA, BMWE requested that the defendant appoint arbitrators to decide 57 contracting out cases pending at the NRAB. (Def.'s Stmt. ¶ 6; Pl.'s Resp. ¶ 6.) On March 5, 2002, plaintiff asked the defendant to "appoint a neutral to establish an agreement creating a public law board for certain contracting out disputes" between plaintiff and BMWE. (Def.'s Stmt. ¶ 7; Pl.'s Resp. ¶ 7.) Plaintiff urged defendant to "expeditiously . . . provide a strike list of seven referees from which the parties can select a procedural neutral to fashion a PLB agreement." (Id.) Subsequently, plaintiff and BMWE entered into an agreement in which they agreed that 61 cases would be heard by eight PLBs that the parties would agree to establish pursuant to the second unnumbered paragraph of Section 3, Second of the RLA, 45 U.S.C. § 153. (Pl.'s Stmt. ¶ 7; Def.'s Resp. ¶ 7.) Plaintiff and BMWE also agreed that once a decision was issued by the first PLB, "one PLB will be held per month for successive months." (Pl.'s Stmt. ¶ 8; Def.'s Resp. ¶ 8.)

Plaintiff and BMWE then entered into eight PLB agreements establishing eight PLBS, each to hear between eight and ten separate cases concerning plaintiff's right to contract out work under various circumstances. (Pl.'s Stmt. ¶ 9; Def.'s Resp. ¶ 9.) As BMWE continued to file additional grievances, plaintiff and BMWE established additional PLBs, totaling 34, to resolve the disputes regarding plaintiff's right to contract out work. (Pl.'s Stmt. ¶ 10; Def.'s Resp. ¶ 10.) There are currently 31 PLBs outstanding with a total of 290 cases before them. (Pl.'s Stmt. ¶ 11; Def.'s Resp. ¶ 11.) Each of the PLB agreements identified specific cases to be heard by that PLB, and each agreement states that cases can be withdrawn from a PLB only by mutual consent of the parties. (Pl.'s Stmt. ¶¶ 12-13; Def.'s Resp. ¶¶ 12-13.) The PLB agreements provide that each PLB "shall continue in existence until it has disposed of the disputes submitted to it under this agreement" and that the PLB "shall have jurisdiction only over the disputes shown on Attachment 'A.' No other claim or grievances shall be submitted to the Board except by mutual consent of the parties to this Agreement." (Pl.'s Stmt. ¶¶ 14-15; Def.'s Resp. ¶¶ 14-15.)

The PLB agreements state that the compensation and expenses of the Neutral Member of the PLB "shall be set and paid for by the National Mediation Board pursuant to Public Law 89-456 [codified as the second unnumbered paragraph of 45 U.S.C. § 153

Second]." (Pl.'s Stmt. ¶ 16; Def.'s Resp. ¶ 16.) Plaintiff and BMWE requested that the defendant appoint Arbitrator Robert Douglas to be the neutral member of the parties' first PLB, PLB 6508, which had jurisdiction to hear eight cases. (Pl.'s Stmt. ¶ 17; Def.'s Resp. ¶ 17.) PLB 6508 held a hearing on August 19, 2002. (Pl.'s Stmt. ¶ 18; Def.'s Resp. ¶ 18.) Arbitrator Douglas issued an award in PLB 6508 on October 14, 2003. (Id.)[1] Arbitrator Douglas concluded in his PLB 6508 decision that the contracting out disputes must be determined "on a case-by-case basis after strict scrutiny of the justification offered by the Carrier to support the need for contracting out scope-covered work." (Pl.'s Stmt. ¶ 21; Def.'s Resp. ¶ 21.)

Plaintiff and BMWE selected Arbitrator Ann Kenis to be the neutral member of the second PLB, PLB 6509. (Pl.'s Stmt. ¶ 22; Def.'s Resp. ¶ 22.) Plaintiff and BMWE agreed to settle the eight cases pending before PLB 6509 before the PLB held a hearing. (Id.) Plaintiff and BMWE selected Arbitrator Elliott Goldstein to be the neutral member of the third PLB, PLB 6510. (Pl.'s Stmt. ¶ 23; Def.'s Resp. ¶ 23.) A hearing on PLB No. 6510

---

[1] Over the course of fifteen months, Arbitrator Douglas charged defendant for fifty-two days of "study and preparation," four hearing days, and six days of decision writing in connection with PLB 6508, for a total charge of $18,600. (Pl.'s Stmt. ¶ 19; Def.'s Resp. ¶ 19.) Over the 15-month period Arbitrator Douglas performed work in connection with PLB 6508, there was an eight-month period between November 29, 2002 and August 6, 2003, during which he did not bill defendant for any work. (Pl.'s Stmt. ¶ 20; Def.'s Resp. ¶ 20.)

took place on April 21, 2004. (Id.) None of the remaining 31 PLBs has held a hearing. (Pl.'s Stmt. ¶ 24; Def.'s Resp. ¶ 24.)

In August 2003, defendant issued an advance notice of proposed rulemaking with respect to whether defendant should require the consolidation of arbitration cases involving similar issues pending before the NRAB. (Pl.'s Stmt. ¶ 25; Def.'s Resp. ¶ 25.) On March 1, 2004, defendant sent a letter to plaintiff and BMWE requesting that they show cause as to why the remaining 31 PLBs should not be consolidated in the interest of economy and efficiency. (Pl.'s Stmt. ¶ 26; Def.'s Resp. ¶ 26.) Plaintiff and BMWE responded to the show cause order stating defendant lacked statutory authority to consolidate PLBs. (Pl.'s Stmt. ¶ 27; Def.'s Resp. ¶ 27.)

On April 7, 2004, defendant issued its Order consolidating the 31 PLBs into existing PLB 6511 and closed the remaining 30 PLBs. (Pl.'s Stmt. ¶ 28; Def.'s Resp. ¶ 28.) The Order states that the arbitrator selected for PLB 6511 will issue guidelines to resolve cases before the PLB and that the same arbitrator will decide the merits of the cases not resolved by plaintiff and BMWE pursuant to the guidelines. (Pl.'s Stmt. ¶¶ 29-30; Def.'s Resp. ¶¶ 29-30.) The Order states that the same arbitrator will issue expedited non-precedential one-page awards that (1) identify the case; (2) state whether the case is sustained in part, denied, or dismissed; and (3) state the monetary remedy, if any, due the

claimants. (Pl.'s Stmt. ¶ 31; Def.'s Resp. ¶ 31.) The Order provides that any of the 290 consolidated cases not resolved by plaintiff and BMWE pursuant to the guidelines are to be decided by the arbitrator within 30 days. (Pl.'s Stmt. ¶ 32; Def.'s Resp. ¶ 32.)

Plaintiff seeks to enjoin defendant from enforcing its Order closing 30 of 31 different PLBs established by agreements between plaintiff and BMWE, and to have the Order declared unenforceable. The Order transferred 290 cases originally assigned to 31 PLBs to one existing PLB and creates new procedures for that PLB to follow. Count I of the complaint alleges that defendant's action exceeds its delegated authority under the RLA, violates the express language of 45 U.S.C. § 153 Second, and abrogates plaintiff's statutory rights to establish PLBs and determine which cases to assign to each PLB. Count II alleges that the procedures for the consolidated PLB proceeding set out in the Order violate the clear language of the statute, including the statute's requirement of a description of the reasons for the determination, as well as plaintiff's due process rights. Defendant contends that it may consolidate and close PLBs pursuant to its authority to attach conditions to the expenditure of funds under 45 U.S.C. § 154 Third.

DISCUSSION

"Summary judgment is appropriate when evidence on file shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . . Not all alleged factual disputes represent genuine issues of material fact which may only be resolved by a jury. Material facts are those that might affect the outcome of the suit under governing law, and a genuine dispute about material facts exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Am.'s Cmty. Bankers v. FDIC, 200 F.3d 822, 831 (D.C. Cir. 2000) (quotations and citations omitted).

> In deciding whether there is a genuine issue of material fact, the court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record. Summary judgment may be granted even if the movant has proffered no evidence, so long as the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Dist. Intown Props. L.P. v. District of Columbia, 198 F.3d 874, 878 (D.C. Cir. 1999)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "Although the burden on the nonmoving party is not great, it is still required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." Palestine Info. Office v. Shultz, 853 F.2d 932, 944 (D.C. Cir. 1988) (quotation and citation omitted).

The parties dispute the appropriate level of review the court should apply to the Order. Plaintiff contends that traditional review under the Administrative Procedure Act applies, which provides that agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" be set aside as unlawful. 5 U.S.C. § 706(2)(A). Defendant argues that the Order is subject to a more limited judicial review, in which the court may only take a "peek at the merits" to determine whether the challenged action constitutes a "gross violation" of the RLA, citing Switchmen's Union of North America v. NMB, 320 U.S. 297 (1943) and Professional Cabin Crew Ass'n v. Nat'l Mediation Bd., 872 F.2d 456, 459 (D.C. Cir. 1989). Defendant exceeded its statutory authority under either standard of review.

I. STATUTORY FRAMEWORK

"Enacted in 1926, the RLA is a comprehensive statute governing labor relations in the railroad and airline industries. In 1934, Congress amended the Act to create the National Mediation Board, a three-member agency whose primary function is to mediate labor disputes among employees and carriers covered by the RLA." Railway Labor Executives' Ass'n v. Nat'l Mediation Bd., 29 F.3d 655, 659 (D.C. Cir. 1994) (en banc) ("RLEA (1994)"). The 1934 amendments also created the National Railroad Adjustment

Board. Gunther v. San Diego & A. E. Ry. Co., 382 U.S. 257, 259 (1965).

> Section 3, First (i) of the Railway Labor Act provides that "disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements" are to be handled by the Adjustment Board. . . . Congress has established the Adjustment Board to settle "minor" grievances . . . which arise from day to day in the railroad industry. . . . Congress, in the Railway Labor Act, invested the Adjustment Board with the broad power to arbitrate grievances and plainly intended that interpretation of these controversial provisions should be submitted for the decision of railroad men, both workers and management, serving on the Adjustment Board with their long experience and accepted expertise in this field.

Id. at 260-62.

> The Adjustment Board was created as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise daily between employees and carriers regarding rates of pay, rules, and working conditions. . . . Congress considered it essential to keep these so-called "minor" disputes within the Adjustment Board and out of the courts.

Union Pacific R. Co. v. Sheehan, 439 U.S. 89, 94 (1978) (citations omitted).

In 1966, the RLA was amended again to authorize the creation of PLBs. 45 U.S.C. § 153 Second. "It is well established that public law boards have primary and exclusive jurisdiction over employee grievances involving the interpretation or application of collective bargaining agreements . . .." United Transp. Union v. National R.R. Passenger Corp., 882 F. Supp. 1, 3 (D.D.C. 1995) (citation omitted).

The RLA provides for a mandatory and exclusive dispute resolution procedure for "minor disputes"[2] between carriers and unions, i.e., disputes concerning the interpretation or application of collective bargaining agreements. 45 U.S.C. § 153. Section 153 First (i) provides that minor disputes "shall be handled in the usual manner up to and including the chief operating office of the carrier designated to handle such disputes." If the dispute continues, the union or employee can submit the dispute to arbitration by the Adjustment Board for resolution. Id. As an alternative to submitting the dispute to the NRAB, the parties can agree to establish a PLB and submit the dispute to that PLB for resolution, 45 U.S.C. § 153 Second, as plaintiff and BMWE have done in this case.

With respect to the establishment of a PLB, the statute provides:

> If written request is made upon any individual carrier by the representative of any craft or class of employees of such carrier for the establishment of a special board of adjustment to resolve disputes otherwise referable to the Adjustment Board, or any dispute which has been pending before the Adjustment Board for twelve months from the date the dispute (claim) is received by the Board, or if any carrier makes such a request upon any such representative, the carrier or the representative upon whom such request is made shall join in an agreement establishing such a board within thirty days from the date such request is

---

[2]The RLA also provides for the resolution of "major disputes," i.e., disputes concerning the formation or change of collective bargaining agreements. 45 U.S.C. § 155. This case does not involve "major disputes."

made. <u>The cases which may be considered by such board shall be defined in the agreement establishing it</u>. Such board shall consist of one person designated by the carrier and one person designated by the representative of the employees. If such carrier or such representative fails to agree upon the establishment of such a board as provided herein, or to exercise its rights to designate a member of the board, the carrier or representative making the request for the establishment of the special board may request the Mediation Board to designate a member of the special board on behalf of the carrier or representative upon whom such request was made. <u>Upon receipt of a request for such designation the Mediation Board shall promptly make such designation</u> and shall select an individual associated in interest with the carrier or representative he is to represent, who, with the member appointed by the carrier or representative requesting the establishment of the special board, shall constitute the board. Each member of the board shall be compensated by the party he is to represent. <u>The members of the board so designated shall determine all matters not previously agreed upon by the carrier and the representative of the employees with respect to the establishment and jurisdiction of the board</u>. If they are unable to agree such matters shall be determined by a neutral member of the board selected or appointed and compensated in the same manner as is hereinafter provided with respect to situations where the members of the board are unable to agree upon an award. <u>Such neutral member shall cease to be a member of the board when he has determined such matters</u>. If with respect to any dispute or group of disputes the members of the board designated by the carrier and the representative are unable to agree upon an award disposing of the dispute or group of disputes they shall by mutual agreement select a neutral person to be a member of the board for the consideration and disposition of such dispute or group of disputes. In the event the members of the board designated by the parties are unable, within ten days after their failure to agree upon an award, to agree upon the selection of such neutral person, <u>either member of the board may request the Mediation Board to appoint such neutral person and upon receipt of such request the Mediation Board shall promptly make such appointment</u>. <u>The neutral person so selected or appointed shall be compensated and reimbursed for expenses by the Mediation Board</u>. Any

> two members of the board shall be competent to render an award. Such awards shall be final and binding upon both parties to the dispute and if in favor of the petitioner, shall direct the other party to comply therewith on or before the day named. Compliance with such awards shall be enforcible by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board.

45 U.S.C. § 153 Second (emphasis added).

The RLA also provides that defendant may make "expenditures" including

> salaries and compensation . . . as may be necessary for the execution of the functions vested in the Board, in the Adjustment Board and in the boards of arbitration, and as may be provided for by the Congress from time to time. All expenditures of the Board shall be allowed and paid on the presentation of itemized vouchers therefor approved by the chairman.

45 U.S.C. § 154 Third.

## II. CONSOLIDATION OF PLBs

### A. Statutory Language

Congress clearly provided that a PLB may be established in one of three ways: (1) the carrier and union join in an agreement establishing a PLB and its jurisdictional scope; (2) if the carrier and union fail to agree to establish a PLB, the party requesting that a PLB be established may request defendant to designate a member of the PLB to represent the non-requesting party, and the requesting party and the designated member then establish the PLB and its jurisdiction; or (3) in the event the members of the PLB cannot agree about the remaining issues

regarding the establishment of the PLB and its jurisdiction, they may either agree upon a neutral or request defendant to appoint a neutral to determine those issues. 45 U.S.C. § 153 Second. There is no statutory language permitting defendant to establish a PLB. Id. Defendant becomes involved only at a party's request, and only to designate a member to represent a party, or to appoint a neutral. Id. The statute provides that within thirty days of one party's request to establish a PLB, "the carrier or the representative upon whom such request is made shall join in an agreement establishing such a board . . .." Id. The statute is also clear in providing that where the parties have entered into a PLB agreement, "[t]he cases which may be considered by such board shall be defined in the agreement establishing it." Id. There is no statutory language permitting defendant to decide or change the jurisdictional scope of a PLB. Once the parties have established a PLB for certain cases, the PLB has primary and exclusive jurisdiction over those cases. United Transp. Union, 882 F. Supp. at 3.

Each and every agreement establishing a PLB between plaintiff and BMWE provides that "[t]he Board shall have jurisdiction only over the disputes shown on Attachment 'A.' No other claims or grievances shall be submitted to the Board except by mutual consent of the parties to this Agreement." (Compl., Att. 2 at 1.) The agreements also provide that "[w]ithdrawal of

any case can only be made by mutual consent of the parties," (id. at 2.), and that "[t]he Board hereby established shall continue in existence until it has disposed of the disputes submitted to it under this agreement or subsequently submitted by mutual consent of the parties, after which it will cease to exist, except for interpretation of the awards provided herein." (Id. at 3.) In the case of PLB 6511, the PLB agreement provides that it has jurisdiction over eight cases. Now, due to defendant's Order, 290 cases are pending before PLB 6511.[3] In enacting 45 U.S.C. § 153 Second, Congress was clear in providing how a PLB could be established and by whom, and defendant's Order is directly contrary to the statutory language.

Defendant argues that because 45 U.S.C. § 154 Third gives it authority over expenditures, it may attach conditions, such as consolidation, to its expenditure of arbitration funds. (Def.'s Mot. at 5.) Defendant contends it has substantial discretion over funding decisions because Congress provided that "[a]ll expenditures of the Board shall be allowed and paid on the presentation of itemized vouchers therefor approved by the chairman." 45 U.S.C. § 154 Third. According to defendant, because it has discretion to fund some arbitration activities over others and the chairman's approval is necessary for any

[3]There is no evidence in the record that defendant has ever before consolidated PLBs.

expenditure to be paid, defendant must be able to attach conditions to its funding. Defendant also argues that if it were not allowed to attach conditions, unions and carriers would control defendant's funding of PLBs. (Def.'s Mot. at 9, n.6.)

The general question of whether defendant may attach conditions to its funding is not at issue. The only question presented is whether defendant's consolidation of existing PLBs violated the statute.[4] Although the language of 45 U.S.C. § 154 Third is permissive with respect to funding, providing that defendant "may" make "expenditures" including "salaries and compensation . . . as may be necessary," and defendant clearly has authority under the statute to make decisions with respect to funding, it does not follow that defendant may, based on budgetary constraints, issue an order directly contradicting the clear statutory language that grants only parties and neutrals, through PLBs, the authority to determine the cases to be heard by a PLB and the procedure for hearing those cases. Nor does defendant's assertion that it is suffering a financial drain as a

---

[4]Defendant seems to have retained control of its funding in the past without taking measures that violate the statute. As defendant states in a supporting declaration, "if the NMB is operating under a continuing resolution, only a portion of the Section 3 activity is allowed to operate. . . . During the last two months of fiscal year 2003, the NMB limited Section 3 activities due to the diminishing amount of available funds." (Def.'s Opp'n to Pl.'s Mot. for Preliminary Injunction, Watkins Decl. ¶ 9.) Thus, defendant has limited the number of PLBs funded in a year due to budgetary constraints, and defendant's authority to do so is not being challenged here.

result of funding the neutrals assigned to resolve the PLBs permit defendant to circumvent that clear statutory language. Defendant has authority to make funding decisions and may exercise that authority where there are budgetary constraints; defendant is still required, however, to respect carriers' and representatives' statutory authority over the establishment and jurisdiction of PLBs.

B. Legislative History

Legislative history also supports the conclusion that Congress intended the parties to a PLB agreement to establish the cases to be determined by the PLB in the PLB agreement. During the House Debate on the 1966 Amendment, Representative Younger stated that

> [a] special board need not hear but one case. It can be agreed and under this bill machinery is provided to determine the extent of the jurisdiction of any given board. It is most likely, therefore, that a special Board once established will hear all of the cases of a certain type arising between one of the brotherhoods and one of the railroads. It may even be agreed that it will hear all cases arising between members of a specific union employed by a particular railroad.

Statement of Mr. Younger, 89th Cong., reprinted in Sen. Subcomm. on Labor of the Comm. on Labor and Pub. Welfare, 93d Cong., Legislative History of the Ry. Labor Act, as amended (1926 through 1966), at 1355 (Comm. Print 1974). Although defendant argues that this statement supports its position that Congress intended all grievances arising out of one carrier's property be

determined in one PLB, the language does not bear out its contention. What the statement clearly demonstrates is an intent that the parties agree on the cases to be assigned to a single PLB. Additionally, the House Commerce Committee Report on H.R. 706, later enacted into law as the 1966 amendments, in discussing the special boards to be established under the amendments, stated that "[t]he cases which may be considered by any special board will, of course, be defined in the agreement establishing the board." H.R. Rep. No. 89-1114 at 14 (1966). Both Representative Younger's statement and the House Report are consistent with the plain language of the statute which provides that the parties are to agree upon the cases to submit to a PLB.

Defendant also argues that the PLB agreements discussed in 45 U.S.C. § 153 Second operate as a limitation on the parties to the PLB and not a limitation on defendant's control over expenditures. (Def.'s Mot. at 14-15.) Defendant contends that the language providing that "[t]he cases which may be considered by such board shall be defined in the agreement establishing it" was intended to ensure that a PLB not be permitted to decide grievances between one of the parties to the agreement and another carrier or union not a party to the agreement, citing to legislative history in which such concerns were raised. (Id. at 14.) While limiting the reach of the PLB to the signatories of the agreement may have been one of the purposes of providing

that an agreement would operate to determine the cases within the PLB's jurisdiction, that purpose does not suggest that Congress intended to allow defendant to determine the jurisdiction of a PLB as a result of its control over expenditures.

In sum, legislative history suggests that Congress intended the parties, through a PLB agreement, to establish the cases to be determined by a PLB. Notably, there is nothing in the legislative history that permits defendant to determine the cases to be decided by a PLB.

C. Case Law

In arguing that defendant has violated the clear terms of the RLA, plaintiff relies primarily on RLEA (1994). That case involved new NMB merger procedures which, among other things, permitted carriers or the NMB to initiate investigation of representation disputes among carriers' employees, despite clear language in the statute providing that "it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute . . .." Id. at 665 (quoting 45 U.S.C. § 152 Ninth). In holding that the new procedures were a gross violation of the statutory language, id. at 659, the court stated that the statute explicitly provided that only employees or their representative had the right to invoke a representation dispute. Id. at 666-67.

> Congress effectively has provided a "who, what, when, and how" laundry list governing the [NMB's] authority.

> These limitations are utterly inconsistent with the notion that the Board blithely may decide that certain circumstances present such an inherent risk of a representation dispute that the board may investigate at will.

Id. at 667. The court also "categorically" rejected the NMB's argument that it had implied authority to implement the new merger procedures, stating that "the [National Mediation] Board's position in this case amounts to the bare suggestion that it possesses ***plenary*** authority to act within a given area simply because Congress has endowed it with ***some*** authority to act in that area." Id. at 670 (emphasis in the original).

Defendant attempts to distinguish RLEA (1994), arguing that the court there stated that the NMB could "point to no other provision in the RLA giving it authority to promulgate the Merger Procedures," 29 F.3d at 659, whereas in this case, 45 U.S.C. § 154 Third gives it authority over expenditures. As is discussed above, the permissive language in 45 U.S.C. § 154 Third does not give defendant license to violate other portions of the statute. Simply stated, there is no language in 45 U.S.C. § 154 Third that permits defendant to violate 45 U.S.C. § 153 Second. Following defendant's argument to its logical conclusion, defendant would have authority to act contrary to any section in the RLA as a result of its authority over expenditures. As in RLEA (1994), the statutory language here does not include a specific prohibition against defendant's challenged action; it

does, however, specifically give enumerated parties -- the carriers and the representatives -- the affirmative grant of power to establish and define the jurisdictional scope of a PLB. The Order, which enlarges the jurisdiction of PLB 6511, while eliminating 30 other PLBs, directly conflicts with Congress' precise language.

Defendant cites a number of cases in support of its position that its authority over expenditures provides the basis for its Order. The first of these, Railway Labor Executives' Ass'n v. Nat'l Mediation Bd., 583 F. Supp. 279 (D.D.C. 1984) ("RLEA (1984)"), aff'd, 757 F.2d 1342 (D.C. Cir. 1985), involved the NMB's decision to discontinue funding for certain private office space used by members of the NRAB in Chicago in carrying out its duties as arbitrators under the RLA after fifty years of providing such funding. On a motion for temporary and preliminary injunctive relief and cross motions for summary judgment, the court held that the RLA did not require the federal government to fund private office space. In so holding, the court noted the language in 45 U.S.C. § 153 First (t), which states "[w]henever practicable, the Adjustment Board shall be supplied with suitable quarters in any Federal building located at its place of meeting," as well as the discretionary expenditure language in 45 U.S.C. § 154 Third. RLEA (1984), 583 F. Supp. at 281. The court stated that "[t]he phrase 'whenever

practicable' does not impose a mandatory requirement on the defendants to furnish private office space to Board members. Instead, Congress gave the NMB considerable latitude to determine whether the Board should be provided with private office space." Id. Also, RLEA (1984) relied in part on a recent appropriations measure whereby Congress adopted the NMB recommendation reporting an amount without funds for NRAB office space over an amount with funds for NRAB office space. Thus, the court held that "[a]t a minimum, these recent actions indicate that Congress did not disagree with the defendants' decision to terminate funding for private office space for NRAB members." RLEA (1984), 583 F. Supp. at 283.

Defendant's reliance on that case is misplaced because the language in 45 U.S.C. § 153 First does not require defendant to provide office space, but rather, clearly provides that office space be provided when "practicable." In contrast, there is no language in 45 U.S.C. § 153 Second that allows defendant to determine the cases to be heard by a PLB or even suggests that defendant has any discretion over the matter. While 45 U.S.C. § 153 Second does not expressly prohibit defendant from creating PLBs or determining their jurisdiction, the statute provides specific language as to who is authorized to do so. Defendant has taken over a role that Congress plainly assigned to the parties to PLB agreements.

Railway Labor Executives' Ass'n v. Nat'l Mediation Bd., 785 F. Supp. 167 (D.D.C. 1991) ("RLEA (1991)") also does not provide support for defendant's argument. That case involved the NMB's decision to discontinue payment for services and expenses of neutral mediators selected for two Special Boards of Adjustment ("SBAs"). Boards of adjustment created pursuant to the first paragraph of 45 U.S.C. § 153 Second are commonly called SBAs, whereas boards of adjustment created pursuant to the second paragraph of 45 U.S.C. § 153 Second are commonly called PLBs. Id. at 169. On a motion for summary judgment, the court determined that the NMB was not required to pay the neutrals appointed to SBAs because the statutory language pertaining to SBAs in 45 U.S.C. § 153 Second was silent as to payment of neutrals. Id. However, in holding that SBA neutrals were not required to be compensated by the NMB, the court distinguished the paragraph addressing PLBs in 45 U.S.C. § 153 Second, stating "[t]he second paragraph of Section 3, Second explicitly provides for the Board's payment of the costs of neutrals appointed to that paragraph's boards of adjustment. But the boards of the second paragraph are different from the SBAs of the first paragraph." Id. Because "no statutory directive exists on the question of who pays the compensation and expenses of neutrals appointed to SBAs," the NMB "cannot be said to have acted contrary to law." Id.

The case at hand involves PLBs and there is a statutory directive on the issue of payment to PLB neutrals. The language in the second paragraph of 45 U.S.C. § 153 Second, which unequivocally requires that defendant reimburse PLB neutrals, says that "[t]he neutral person . . . shall be compensated and reimbursed for expenses by the Mediation Board."[5] 45 U.S.C. § 153 Second. Accordingly, RLEA (1991) actually supports plaintiff's position.

Defendant also relies on American Train Dispatcher's Ass'n v. Nat'l Mediation Bd., No. 96-2076, 1992 WL 336734 (D.D.C. Oct. 29, 1992), which held that the NMB's refusal to fund two staff positions at the NRAB was within the NMB's discretion under the statute, because the statute provides that the NRAB may, "subject to the approval" of the NMB, "employ and set the compensation" of certain necessary assistants. 45 U.S.C. § 153 First (u) (cited in American Train, 1992 WL 336734, at *2). However, the statute made funding NRAB staff positions subject to the NMB's approval, whereas the creation of PLBs and the determination of their jurisdictional scope is not subject to the defendant's approval. Accordingly, this case, like the two discussed before it, provides defendant no support for its argument.

---

[5]The implementing regulations provide that neutrals "will be compensated by the Mediation Board in accordance with legislative authority." 29 C.F.R. § 1207.3(a).

Notably, none of the three cases defendant cites involved the NMB acting directly contrary to RLA provisions. Here, the language setting forth who may establish PLBs and determine the cases to be decided by the PLBs is clear, and the Order, in transferring cases from 30 PLBs to PLB 6511, directly violates the plain statutory command of 45 U.S.C. § 153 Second.

The consolidation was contrary to the unambiguous terms of the statute, and therefore, the Order is void and unenforceable. Plaintiff's remaining arguments concerning the process established by defendant for the determination of the consolidated PLB need not be addressed.

CONCLUSION

Because defendant's Order is a gross violation of the clear statutory language of the RLA, plaintiff's motion for summary judgment will be granted as to Count I in the Complaint and defendant's motion to dismiss or for summary judgment will be denied. Judgment will be entered in favor of plaintiff declaring that the Order is void and unenforceable as contrary to the plain language of the RLA, which does not permit defendant to establish a PLB or to determine the jurisdictional scope of a PLB, and permanently enjoining defendant from enforcing the Order. Count II will be dismissed as moot. A separate order accompanies this Memorandum Opinion.

SIGNED this 29th day of August, 2005.

/s/
RICHARD W. ROBERTS
United States District Judge